IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                                  **REPORT, RECOMMENDATION,
                                  AND ORDER**

v.

KARL DAVID AUDIRSCH,                11-CR-00385-RJA-JJM-3

            Defendant.
_____

        This case was referred to me by Hon. Richard J. Arcara for supervision of all pretrial proceedings [10].[1] Before me is defendant's motion to suppress a statement which he made on November 6, 2011, and to establish conditions of bail [61].[2] An evidentiary hearing was held on April 16, 2013 [85], followed by the parties' post-hearing submissions [88, 89].

        For the following reasons, defendant's motion to establish conditions of bail is denied without prejudice to renewal at a later date, and I recommend that his motion to suppress his statement likewise be denied.

## BACKGROUND

        Defendant Audirsch is charged with possession with intent to distribute, and distribution of, 5 kilograms or more of cocaine on or about November 6, 2011, in violation of 21 U.S.C. §§841(a)(1), 841(b)(1)(A) and 18 U.S.C §2, and with conspiring with co-defendants Letorrance Travis and Luis Manuel Zuniga to possess with intent to distribute and to distribute

---

    [1]    Bracketed references are to CM-ECF docket entries.

    [2]    While Audirsch also challenged the seizure of his person (Cotter Affirmation [61], ¶8), he withdrew that challenge on April 2, 2013 [72]. His motion for discovery [40] was also previously resolved. *See* Text Order dated August 14, 2012 [47].

cocaine, in violation of 21 U.S.C. §846. Indictment [9], Counts 1 and 3. In moving to suppress his statement, Audirsch argues that the "taking of the statement, without providing him with an attorney, is violative of his rights under the Constitution of the United States". Cotter Affirmation [61] ¶14.

At the evidentiary hearing, Audirsch testified that he was arrested in the early evening of November 6, 2011 in the parking lot of the McDonald's restaurant on Genesee Street in Cheektowaga, New York (across from the Buffalo Niagara International Airport). He stated that at the time of his arrest he was told by agents to get on the ground ([85], p. 28). Once on the ground, he was handcuffed, and "the first thing they said was you're going to do ten years for drug conspiracy", in response to which he said, "I need a lawyer" (id., pp. 29, 30). He was then led to a vehicle where another agent told him that he was "looking at ten years", whereupon he again stated "I need an attorney" (id., p. 30).

Audirsch testified that he was then transported to the DEA office in downtown Buffalo in the front passenger seat of a vehicle driven by DEA Special Agent Christopher Wisniewski (id., p. 27). He claims that while they were en route, SA Wisniewski "was telling me the best thing for me to do would be to talk to him. And again . . . I said, I need a lawyer" (id., pp. 30-31). He stated that SA Wisniewski also told him "that . . . I could get a charge for lying to a federal officer" (id.). However, he admitted that nobody suggested to him that it was a crime to refuse to speak to the agents (id., pp. 47-48). He stated that although he "had already asked for a lawyer three times . . . nothing stopped. I was under the impression that when you asked for a lawyer, they're supposed to stop talking to you" (id., p. 38).

Audirsch admitted signing and initialing an "Advice of Rights" form (id., pp. 36-38) which stated: "You have the right to talk to a lawyer for advice before we ask you any questions. You have the right to have a lawyer with you during the questioning. If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish" [77]. He signed the following statement: "I understand what my rights are. At this time, I am willing to freely and voluntarily answer questions without a lawyer present" (id.).

Audisch claimed that he signed the statement because he "had already asked for a lawyer, and . . . didn't think that I could not talk to them after he had done told me that I could get a separate charge for lying to an agent" ([85], p. 49). Although he stated that "this was my first time around with the feds . . . . [I] wasn't really aware of how things worked" (id., p. 48), he admitted that he had previously been advised of his <u>Miranda</u> rights in connection with other arrests (id., pp. 45-46).

DEA Special Agent Christopher Wisniewski, who was involved in Audirsch's arrest, testified that he placed Audirsch in his vehicle and drove him to the DEA office in Buffalo (id., pp. 7-8). During the drive, they had "mostly a one-way conversation", with SA Wisniewski telling Audirsch that he had attended law school, that lying to a federal agent was a separate offense, and that he was in custody and not free to leave (id., pp. 13, 15). SA Wisniewski did not recall telling Audirsch that he was facing a minimum of ten years for cocaine conspiracy or that the best thing he could do would be to talk to them (id., pp. 14, 15). He read the Advice of Rights form to Audirsch and witnessed him read, initial and sign the form (id., p. 9), and did not begin the interview until after Audirsch had signed the form (id., p. 10). He testified that at no time did Audirsch rquest an attorney (id., p. 11).

FBI Special Agent Vanessa Paris testified that she drove Audirsch's van to the DEA office, where she witnessed SA Wisniewski read the Advice of Rights form to Audirsch and witnessed Audirsch initial and sign the form, and that at no time did Audirsch request an attorney ([85], pp. 20-23).

## ANALYSIS

A.  **Suppression of Audirsch's Statement**

While Audirsch argues that "[a]n individual charged with violating crimes of the United states has a right to counsel (U.S. Const. Amend. VI)" (Audirsch's Memorandum of Law) [88], p. 4 of 6), he had not yet been formally charged at the time of his statement. "The Sixth Amendment right to counsel attaches only at the initiation of adversary criminal proceedings . . . and before proceedings are initiated a suspect in a criminal investigation has no constitutional right to the assistance of counsel." Davis v. United States, 512 U.S. 452, 456-57 (1994).

Nevertheless, the Fifth Amendment guarantees "that a suspect subject to custodial interrogation has the right to consult with an attorney and to have counsel present during questioning, and that the police must explain this right to him before questioning begins". Id. at 457. "[A]n accused . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." Edwards v. Arizona, 451 U.S. 477, 484-85 (1981).

However, "the suspect must unambiguously request counsel" in order for questioning to cease. Davis, 512 U.S. at 459. Therefore, the sole question for my determination

is whether Audisch did so, and both parties appear to agree that the government bears the burden of proof on this issue. *See* Audirsch's Memorandum of Law [88], p. 4 of 6; Government's Post-Hearing Memorandum [89], p. 3.

"[T]his case turns, as many do, on the issue of credibility". United States v. Bayless, 921 F.Supp. 211, 213 (S.D.N.Y. 1996). "It is within the province of the district court as the trier of fact to decide whose testimony should be credited." Krist v. Kolombos Rest. Inc., 688 F.3d 89, 95 (2d Cir. 2012). After carefully considering the record evidence, including the exhibits and testimony and demeanor of the witnesses, I find the government witnesses' testimony that Audirsch did not request an attorney to be more credible than Audirsch's testimony that he did. In particular, his testimony is difficult to reconcile with the fact that he initialed and signed the Waiver of Rights form [77].[3] Although he alleges that since this was his first encounter "with the feds" and that he "wasn't really aware of how things worked", this was not his first encounter with law enforcement. He testified that he was given Miranda warnings following his 1993 arrest in Louisiana and did not speak to police at that time ([85], pp. 45-46).

Moreover, I question Audirsch's capacity to accurately recollect the details of his arrest, given his admission that he had been using methamphetamine prior to his arrest and that he was emotional and confused at the time (id., pp. 32, 39). *See* United States v. Bailey, 510 F.3d 726, 734 (7th Cir. 2007) ("It is probably true that witnesses who were stoned during the relevant parts of the investigation did not have all their wits about them, making their memories fuzzy when they took the stand. This could, in turn, lessen the credence that is owed to their version of events").

---

[3] Audirsch does not argue that his Miranda waiver was not knowing or voluntary.

Since I find that Audirsch did not request counsel prior to giving his statement on November 6, 2011, I recommend that his motion to suppress that statement be denied.

**B.     Motion for Bail**

Audirsch requests that in the event that his motion to suppress is not granted, I "set bail in a reasonable amount, or establish[ ] conditions or a combination of conditions to insure his future court appearances". Cotter Affirmation [61], ¶4. Although he has not raised a due process challenge to his continued detention, Audirsch notes that as of the filing of his motion in April of 2013, he had been detained for approximately 16 months. Id., ¶3. In response, the government argues that there has been no change in circumstances warranting bail. Government's Response [65], p. 2.

Audirsch was initially charged in a Criminal Complaint with similar offenses [1]. Following a detention hearing on November 16, 2011 [8], I ordered Audirsch detained, concluding that he had not rebutted the presumption arising from the nature of his charges that no condition or combination of conditions would reasonably assure his appearance and the safety of the community. [7], p. 1. Audirsch was arraigned on the Indictment on December 22, 2011 [11], and a detention hearing was scheduled for January 9, 2012. However, on January 6, 2012, Audirsch withdrew without prejudice his request for a detention hearing, since he was "not able to offer the court any new information in terms of having property or money to post as security, and have no new circumstances since the Complaint stage". Therefore, I entered an Order of Detention [16] on January 9, 2012, "without prejudice to his right to request a detention hearing at a later date based on changed circumstances." Id., p. 2.

The court may reconsider detention "at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. §3142(f)(2)(B). "'New and material information for Section 3142(f)(2)(B) purposes consists of . . . truly changed circumstances, something unexpected, or a significant event.'" United States v. Speed, 2013 WL 1221479, *3 (W.D.N.Y. 2013) (Scott, M.J.) (*quoting* United States v. Jerdine, 2009 WL 4906564,*3 (N.D.Ohio 2009)).

Notwithstanding the length of Audirsch's pretrial detention (now totaling approximately 22 months), I note that the pretrial proceedings in this case are nearly concluded.[4] Other than the duration of his detention, Audirsch has not pointed to any additional change in circumstances. While Audirsch's attorney suggested at the April 2, 2013 proceeding [72] that there may be property in Louisiana owned by Audirsch's mother and step-father which could be posted for bail, no concrete bail package has been presented to me. Therefore, Audirsch's motion for bail is denied, without prejudice.

## CONCLUSION

For these reasons, Audirsch's motion for bail [61] is denied, without prejudice, and I recommend that his motion to suppress statements (id.) likewise be denied. Unless otherwise ordered by Judge Arcara, any objections to this Report, Recommendation and Order

---

[4] At least some of this delay is attributable to Audirsch. For example, Audirsch did not file his suppression motion until March 13, 2013 [61], long after the July 11, 2012 deadline for all pretrial motions. Second Amended Scheduling Order [30], ¶1.

must be filed with the clerk of this court by October 28, 2013 (applying the time frames set forth in Fed. R. Crim. P. ("Rules") 45(a)(1)(C), 45(c), and 59(b)(2)). Any requests for extension of this deadline must be made to Judge Arcara. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b)(2) of this Court's Local Rules of Criminal Procedure, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority", and pursuant to Local Rule 59(b)(3), the objections must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objection.

DATED: October 10, 2013

                                             /s/ Jeremiah J. McCarthy
                                             JEREMIAH J. MCCARTHY
                                             United States Magistrate Judge